[Cite as *State v. Bloom*, 2013-Ohio-1171.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97535**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ROBERT J. BLOOM

DEFENDANT-APPELLANT

## JUDGMENT:
APPLICATION DENIED

Cuyahoga County Court of Common Pleas
Case No. CR-552802
Application for Reopening
Motion No. 459511

**BEFORE:** Jones, J., Blackmon, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** March 22, 2013

**FOR APPELLANT**

Robert Bloom
Inmate No. 620-205
Lorain Correctional Institution
2075 S. Avon-Belden Road
Grafton, Ohio 44044


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Mark J. Mahoney
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} On October 19, 2012, the applicant, Robert Bloom, pursuant to App.R. 26(B) and *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), applied to reopen this court's judgment in *State v. Bloom,* 8th Dist. No. 97535, 2012-Ohio-3805, that affirmed Bloom's convictions and sentences for one count of felonious assault with a one-year firearm specification, one count of felonious assault with a three-year firearm specification, and one count of improperly discharging a firearm into a habitation with a three-year firearm specification. Broom claims that his appellate attorney was ineffective for not arguing that the trial court erred when it proceeded to disposition without holding a hearing on Bloom's competency. On November 19, 2012, the state of Ohio filed its brief in opposition. For the following reasons, this court denies the application to reopen.

{¶2} On the night of June 8, 2011, Bloom and his friend, Jesse Lester, were drinking at a friend's house. Lester got into an argument with people from the house across the street, and one of those people showed a gun. Bloom then encouraged Lester to retrieve his AK-47 from his car and helped him load it. Lester also indicated that Bloom got a shotgun from the friend's house. Lester then fired his assault rifle at the house. Lester and Bloom left, but returned in the early hours of June 9, 2011, and shot the AK-47 at the house again. Bullets also struck two other houses and caused injury to an elderly woman.

{¶3} The grand jury indicted Bloom and Lester on multiple counts of felonious assault, discharging a weapon at a habitation or near a prohibited premises, vandalism, and criminal damaging. Bloom also faced counts of having a weapon under disability. Many of these charges included one- and three-year firearm specifications.

{¶4} The prosecutor offered both Lester and Bloom a plea bargain: one count of felonious assault with a one-year firearm specification, one count of felonious assault with a three-year firearm specification, and one count of improperly discharging a firearm into a habitation with a three-year firearm specification. Lester accepted the plea bargain and promised that he would testify truthfully in this matter.

{¶5} Bloom had filed a motion to disqualify his lawyer, because it seemed to him that the lawyer was only interested in pursuing a plea bargain and not spending sufficient time on the case. After Lester pleaded guilty and before the start of trial, the judge held hearing on the motion to disqualify. During this hearing, Bloom stated: "I also want to put on the record that I am severely bipolar and I've been on medication for it, 1000 milligrams of Lithium a day, and I don't understand why I've never been evaluated for a psych judge." (Tr. 30.) The trial judge denied the motion to disqualify and did not order a competency hearing. Bloom expressed his desire to proceed to trial.

{¶6} A jury was selected and sworn in on the afternoon of October 11, 2011. Before the trial judge dismissed the jury for the day, Bloom indicated that he would accept the plea bargain. The trial judge began the guilty plea colloquy during which Bloom stated he was on mind-altering medication. As the judge was explaining the

possible penalties, Bloom said, "I can't plead guilty to something I didn't do." (Tr. 167.) The judge recalled the jury and dismissed them for the day.

{¶7} On the morning of October 12, 2011, Bloom, through his lawyer, announced that he would plead guilty. The lawyer explained that it had been difficult for Bloom to understand his culpability through aiding and abetting; Bloom's thinking had been that he could not be guilty of these crimes if he had not shot the weapon. This time Bloom and the judge completed the Crim.R. 11 guilty plea colloquy, and Bloom pleaded guilty to the three offenses. The judge postponed sentencing until the afternoon to allow all the victims to be present.

{¶8} Before the sentencing, Bloom moved to withdraw his guilty plea, because "he didn't do it." The judge conducted a hearing on the motion and denied it. He then sentenced Bloom and Lester each to a total of ten years in prison.

{¶9} After reviewing the record, except for the isolated references to being bipolar and taking medication, there is no indicia that Bloom was incompetent to stand trial or could not aid in his defense. Throughout the multiple colloquies between the judge and Bloom, it is apparent that he understood the charges against him, the possible penalties, and the proceedings.

{¶10} Bloom's appellate counsel argued that the trial judge erred in denying his motion to withdraw his guilty plea and in imposing consecutive sentences.

{¶11} Bloom now argues that his appellate counsel should have argued that the trial court erred when it proceeded to disposition without holding a hearing on Bloom's

competency once it was on notice that Bloom was mentally unstable and on medication. He submits that R.C. 2945.37 requires a trial court to hold a hearing on competency if the issue is raised before trial, including obtaining expert reports. Bloom concludes that the failure of the trial court to follow the statute and make an explicit determination on competency was reversible error.

{¶12} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

{¶13} In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶14} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative

to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶15} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶16} R.C. 2945.37(G) presumes that a defendant is competent to stand trial. However,

[i]f, after a hearing, the court finds by a preponderance of the evidence that,

because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial.

{¶17} Nevertheless, the Supreme Court of Ohio has held "that the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency. *State v. Bock,* 28 Ohio St.3d 108, 110, 205 N.E.2d 1016 (1986). In *Bock,* defense counsel entered a plea of not guilty by reason of insanity, and the court ordered a psychiatric report. However, the trial court never resolved the matter. No report was filed, and the court did not conduct a hearing. The court of appeals held that the failure to hold a hearing was reversible error. The Supreme Court of Ohio reversed because the record did not reveal an indication of any behavior by the defendant that might show incompetency.

{¶18} This court followed *Bock* in *State v. Fhiaras*, 8th Dist. No. 97740, 2012-Ohio-3815. Fhiaras was charged with a sudden, unprovoked, violent attack on an acquaintance. Fhiaras had trouble getting along with his attorneys, and refused to cooperate with the psychiatric clinic. Nevertheless, this court held that any error in not holding a competency hearing was harmless because the record did not suggest a lack of competency. Fhiaras always addressed the court in an appropriate manner and demonstrated a complete understanding of the proceedings.

{¶19} Bloom tries to distinguish *Bock* on the grounds that Bock underwent a full trial and offered his own testimony, but in the present case there is not sufficient

information in the record to determine that the failure to hold a competency hearing was harmless error. This argument is ill-founded. The judge and Bloom had at least four colloquies, and in all of them Bloom showed an understanding of the charges, the penalties, and the proceedings. All of his answers were cogent, and he never displayed any erratic behavior. Furthermore, the judge repeatedly asked if Bloom understood the charges and the proceedings, and Bloom answered "Yes." Therefore, it is understandable how appellate counsel in the exercise of professional judgment could decide not to argue the lack of a competency hearing, and instead argue error in denying the motion to withdraw the guilty plea and in imposing consecutive sentences. Moreover, appellate counsel noted Bloom's difficulties with his attorney, his motion to disqualify counsel, and the attorney's failure to request a competency hearing as part of the argument on the motion to withdraw the guilty plea. Following the United States Supreme Court's admonitions, this court will not second guess counsel's decisions on strategy and tactics.

{¶20} Nor is Bloom's failure to understand the scope of aiding and abetting sufficient to show incompetence. In *State v. Jones*, 1st Dist. No. C-50112, 2006-Ohio-2339, Jones may have been suffering from depression, and he did not understand how his behavior of skipping required programs and moving to Kentucky could constitute a violation of community control. The court rejected the argument that his "confusion" showed incompetence; rather, he simply disagreed with what constituted a violation. So too in the present case, Bloom disagreed with the principles of aiding and

abetting. Having a deeply held conviction of what the law should be does not show incompetence.

{¶21} Accordingly, this court denies the application to reopen.

LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
MARY J. BOYLE, J., CONCUR